**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In the Matter of the Complaint of Tamara Sopka, ) <br> Independent Administrator of the Estate of ) <br> Orest Sopka, Deceased, and Axess Holding ) <br> Company, LLC as Owners of a 2012 Rinker ) <br> 310 Express motor vessel "AXESS", for ) <br> Exoneration from or Limitation of Liability ) | Case No. 15 C 3230 |

## MEMORANDUM OPINION AND ORDER

Markel American Insurance Company ("Markel") has motioned to intervene in this action pursuant to Fed. R. Civ. P. ("Rule") 24(b). For the several reasons articulated in this opinion, Markel's petition must be and is denied.[1]

## Background

In April 2015 co-plaintiffs Tamara Sopka, Independent Administrator of the Estate of decedent Orest Sopka ("Sopka"), and Axess Holding Company, LLC ("Axess Holding") filed this action seeking exoneration from or limitation of liability under the auspices of the Limitation of Vessel Owner's Liability Act (the "Act," more specifically 46 U.S.C. § 30511 ("Section 30511")). That action focuses on the May 31, 2014 sinking on Lake Michigan of the motor vessel "AXESS," resulting in the tragic death of all but one of the persons aboard: Sopka himself, Megan Blenner and Ashley Haws. Shai Wolkowicki ("Wolkowicki") was the sole survivor.

---

[1] Because Rule 24(b) speaks in terms of "motion" rather than "petition," and because the two terms have synonymous meaning in the present context, from here on out this opinion will employ the Rule 24(b) term "motion."

Following that tragedy, each of the decedents' estates as well as Wolkowicki filed lawsuits in the Circuit Court of Cook County against Creative Yacht Management, Inc. d/b/a SailTime Chicago ("SailTime") -- a fractional boat-sharing company. In all of those lawsuits Axess Holding is named as a third-party defendant, while Sopka is so named in three of them. But in May 2015 this Court put them those cases on the back burner through its entry of an order (Dkt. No. 8) that restrained and enjoined all claims and proceedings stemming from the accident. That order was later modified on December 7 of that year.

At the time of the accident Sopka, SailTime and Axess Holding (collectively the "Insureds") were insured under Markel Helmsman Yacht Policy No. MHY00000187921 (the "Policy"). Markel asserts that under the Policy its tendering of the policy limit to the state court will relieve it of its obligation to defend the Insureds. But before Markel is able to file an interpleader and proffer such a tender, it must first intervene in this action and obtain relief from this Court's stay. This opinion now turns to the merits of (or as analysis will disclose, the lack of merit in) that attempted intervention.

## **Permissive Intervention Under Rule 24(b)**

Markel seeks to intervene under the permissive intervention provision embodied in Rule 24(b), which reads in relevant part:

(1) <u>In</u> <u>General</u>. On timely motion, the court may permit anyone to intervene who:

(A) is given a conditional right to intervene by a federal statute; or
(B) has a claim or defense that shares with the main action a common question of law or fact.

\* \* \*

(3) <u>Delay</u> <u>or</u> <u>Prejudice</u>. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

And Rule 24(c) prescribes what is needed to tee up such a motion for decision:

> A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

As will be seen, Markel's failure to comply with multiple requirements of those provisions dooms its motion.

First and most obviously, Markel has failed to accompany its motion with a proposed pleading as unambiguously required by Rule 24(c). While Markel has attached a proposed motion, that will not cut it for purposes of compliance with Rule 24(c), for its motion does not "set[ ] out the claim or defense for which intervention is sought" as that rule mandates.

But Markel's motion is not only procedurally defective but is also untimely. As explained in Heartwood, Inc. v. U.S. Forest Serv., Inc., 316 F.3d 694, 701 (7th Cir. 2003) (with internal citations and quotation marks omitted):

> A prospective intervenor must move promptly to intervene as soon as it knows or has reason to know that its interests might be adversely affected by the outcome of the litigation.[2] In determining whether a motion to intervene is timely, we consider four factors: (1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; [and] (4) any other unusual circumstances.

Here this action has been pending since April 2015, and all of the Insureds have been parties from the get-go.[3] Markel has offered no justification for its 14-month delay in filing its present motion, and such untimeliness alone is an adequate ground for denial of the motion (see, e.g.,

---

[2] [Footnote by this Court] In addition to its other failures that this opinion goes on to describe, Markel has failed to demonstrate why the outcome of this litigation would adversely affect its interests -- at least its legitimate interests.

[3] And in fact the first state court action -- brought by Wolkowicki -- was filed in July 2014.

Southmark Corp. v. Cagan, 950 F.2d 416, 418 (7th Cir. 1991), holding that intervention 15 months after commencement of suit was untimely).

As if that were not reason enough to deny Markel's motion, it also flunks Rule 24's requirement that its claims and defenses (or at least, given Markel's failure to attach a pleading, its presumed claims and defenses) share a common question of law or fact with the principal action. At issue in this lawsuit is whether Sopka and Axess Holding are entitled to limit their liability under the Act. Whether Markel is obligated to defend the Insureds in the underlying state court actions is a distinct issue, rooted largely in the interpretation of the Policy's coverage terms. So the lack of legal or factual commonality between Markel's would-be claim and that of the current parties is another nail in the analytical coffin that inters Markel's motion.

Although what has been said to this point would readily suffice to call for the dismissal of Markel's effort to shoehorn itself into this case, what is the final nail -- and really the most substantively significant one -- that closes the coffin on that effort is the fact that Markel's underlying attempt to terminate its defense of the Insureds in the state court actions collides head-on with Illinois law and its own Policy. As summarized succinctly in Am. Serv. Ins. Co. v. China Ocean Shipping Co. (Am.) Inc., 402 Ill. App. 3d 513, 525, 932 N.E.2d 8, 20(1st Dist. 2010), citing and quoting extensively from a number of other cases, including an Illinois Supreme Court opinion that so held:

> Illinois cases have consistently held that an insurer cannot discharge its duty to defend by simply depositing policy limits with the court.

And that principle is directly called into play by the specific terms of Markel's Policy as to its coverage, which state in relevant part:

> We will cover damages for bodily injury or property damage for which an insured becomes legally liable through ownership, maintenance, or use of the insured

yacht, or through a non-owned yacht being operated by you with the owner's permission

* * *

Our duty to defend any claim or suit ends when the amount we pay, or tender to the Court of Jurisdiction for any pending litigation on your behalf, for damages resulting from the occurrence equals the limit for 'Protection and Indemnity' shown on the Declaration Page.

If a suit is brought against you for claims falling within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, we will afford a defense to such action; however, we will not have any obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

Look particularly at those last two quoted provisions. Under the first of them, Markel's duty to defend the Insureds in the underlying actions ends only when it pays or tenders funds up to its policy limits to cover the Insureds' adjudicated liability for damages. But until that happens, the first quoted paragraph unequivocally obligates Markel to continue to provide a defense in those underlying actions -- a duty that to this Court's knowledge is present in all such policies, reflecting the universal proposition that an insurer's continuing duty to defend is independent of, and often broader than, its duty to indemnify.

In sum, Markel's avowed purpose in seeking intervention -- a purpose expressly stated in its draft of the Complaint for Interpleader that it proposes to file in the Circuit Court if its present motion before this Court were to be granted -- is to attempt to weasel out of its duty to defend that _it_ inserted into _its_ Policy, for which it has collected the insurance premiums that _it_ set, by tendering its $1 million limit in damages coverage to the Circuit Court.[4] That attempt flouts the

---

[4] That draft Complaint is Ex. A to the Sopka-Axess response to Markel's motion before this Court and is Dkt. No. 89-1 in this case. Here are Paragraphs 21 and 22 of that Complaint:

(continued)

universal teaching of the caselaw as well as Markel's own contractual commitment -- and to return to the standard articulated in Rule 24(b)(3), it is difficult to conceive any motion to intervene that would generate more undue delay and create greater undue "prejudice [to] the adjudication of the original parties' rights" than allowing Markel to escape from its ongoing duty to defend those parties' interest in the underlying actions.

## Conclusion

For the reasons stated in this opinion, Markel's motion is denied.[5] This action will proceed on its regular course without the disruptive digression that Markel's addition to the fray and its effort to get out of its duty to defend would have created.

_____
Milton I. Shadur
Senior United States District Judge

Date:  August 9, 2016

---

(footnote continued)
>    21.   MAIC hereby tenders into the registry of this Court the Sum of $1,000,000.  MAIC is a disinterested stakeholder as to this amount.
>
>    22.   In tendering this sum, MAIC is exercising its contractual right under the Policy to terminate its duty to defend the Defendants, effective upon the Court's acceptance of the tendered sum.

To be blunt, that Paragraph 22 reference to "its contractual right" is a flat-out falsehood, as the discussion here has demonstrated.

[5] As to the merit or lack of merit of Markel's accompanying proposed motion to modify this Court's stay, that issue has been rendered moot by the opinion issued here, and that aspect of Markel's motion is therefore denied on mootness grounds.